# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| FELICE HOWARD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 16-00197-KD-C |
| | ) | |
| MOBILE COUNTY BOARD OF SCHOOL, | ) | |
| COMMISSIONERS and LARRY MOUTON, | ) | |
|     Defendants. | ) | |

## ORDER

This matter is before the Court on the Board's motion for summary judgment (Docs. 39),

Mouton's motion for summary judgment (Doc. 41), defendants' evidentiary submissions (Doc.

40), Plaintiff's responses (Docs. 46-59, 64) and defendants' replies (Doc. 59, 61); and Mouton's

motion to strike (Doc. 60) and Plaintiff's opposition (Docs. 63).[1]

## I.    Findings of Fact[2]

On May 6, 2016, Plaintiff Felice Howard (Howard) initiated a race and sex pattern and

practice discrimination case against her employer Defendant Mobile County Board of School

---

1 While Howard submitted more than 550 pages of exhibits, the Court will not consider the uncited portions of the exhibits (the same applies to defendants). Hughes v. Stryker Sales Corp., 2010 WL 1961051, *3 (S.D. Ala. 2010) ("this Court will not scour the uncited portions of…evidentiary submission for any scrap of evidence that may advance her position[]"); Preis v. Lexington Ins. Co., 508 F.Supp.2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions[]"). This Court's review of the evidentiary submissions is restricted to the portions cited. Rowell v. Winn Dixie, 2008 WL 4369003, *1 n. 3 (S.D. Ala. Sept. 23, 2008). See also Carolina Acquisition, LLC v. Double Billed, LLC, 627 F.Supp.2d 1337, 1340 (S.D. Fla. 2009) ("Federal judges are not archaeologists....We possess neither the luxury nor the inclination to sift through that mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment[]"); Witbeck v. Embry Riddle Aeronautical Univ., Inc., 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour…is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial[]").

2 At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000). Unless cited, the facts are those alleged in the Complaint by Plaintiff.

Commissioners (the Board) and Defendant Larry Mouton (Mouton)[3] as follows: Count I -- under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. and Section 1981, against the Board; and Count II -- equal protection claims under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment, against the Board and Mouton. (Doc. 1). Howard asserts that she, an African American female, was treated differently than a Caucasian male in 2013-2014 when she was not promoted to Supervisor of Agriscience, Technical Education and Career Technologies.[4]

Howard is currently employed by the Board as a Cooperative Education Coordinator Teacher (Co-Op Teacher), and coordinates with businesses and industries in the community to coordinate student placement and support. (Doc. 1 at 3). In the early 1990s, Howard was briefly employed by the Mobile County School System as a Title I Aide and a Migrant Co-Op Coordinator in Alba, and was transferred to LeFlore to work as a Marketing Education Coordinator. (Doc. 40-1 (Dep. Howard at 20-22)). From 1993 to 1997, Howard obtained her MBA and completed her marketing certification. (Id. (Dep. Howard at 23)). In 1997, Howard returned to the school system as a teacher at Satsuma, teaching for the next 13 years until Satsuma left the system. (Doc. 40-1 (Dep. Howard at 27)). In 2012, Howard was assigned to Theodore High School and was directed to establish a Co-Op program (for which she would recruit students, parents and businesses to participate). Howard was successful in building the program with 20-30 students each semester, each with a different assigned work site. Howard

---

3 Mouton is the Assistant Superintendent of Workforce Development for the Mobile County School system and the relevant department head. (Doc. 40-1 (Dep. Mouton at 9)).

4 In her complaint, Howard also mentions a 2011 position of Supervisor of the Career Tech Department and a 2014 Lead Teacher position in which she was interested. These do not appear to be separate claims of discrimination but rather facts alleged to support Howard's contention that Mouton engaged in a practice of pre-selecting candidates.

established a Distributive Education Clubs of America (DECA) chapter at the school. Howard also served as the Career Technical Department Chair for 8 years, supervised 8-10 teachers in her department and served as Acting Principal for the 2005 and 2007 Summer school terms.

In October 2013, Supervisor of Agriscience, Technical Education and Career Technologies, Steve Boykin (Boykin), announced his plans to retire. (Doc. 40-1 (Dep. Howard at 38-39); Doc. 40-2 (Dep. Prine at 83-84); Doc. 40-1 (Dep. Mouton at 41-42)). On October 28, 2013, Mouton notified HR that he needed someone for the position. (Doc. 40-1 (Dep. Mouton at 41)). In October Howard was told by a colleague that Mouton had already promised Boykin's job to Richard Allen Merryman (Merryman), a Caucasian male.[5] (Doc. 40-1 (Dep. Howard at 38, 45)). At that time, there was no notice or posting of the vacancy by the Board because Boykin had not yet officially retired. (Id. (Dep. Howard at 38-39)). However, Merryman testified that he never told anyone that Mouton promised him the position. (Doc. 40-2 (Dep. Merryman at 37)).

In November 2013, Boykin officially announced his retirement. (Doc. 40-2 (Dep. Prine at 83-84); Doc. 40-1 (Dep. Mouton at 41-42); Doc. 48-1 (Aff. Howard)). On November 22, 2013, Boykin officially retired, and Nancy Prine assumed his responsibilities. (Doc. 40-2 (Dep. Prine at 84)). In November 2013, Merryman asked Mouton for a letter of recommendation for Boykin's position. (Doc. 40-2 (Dep. Merryman at 100)). Committee member Prine also provided a letter of recommendation to Merryman for the position. (Doc. 40-2 (Dep. Prine at 85)).

On May 1, 2014, the Board posted the vacancy for the position. (Doc. 40-1 at 2; Doc.

---

[5] This statement by Howard is inadmissible hearsay. It is included to add context to Merryman's subsequent denial.

40-1 (Dep. Howard at 99-100)). The hiring process is as follows:

> -HR posts the job announcement/opening, screens applicants, verifies applicant qualifications and then provides a qualified applicant list to hiring managers.

> -For the job announcement, HR pulls up the last job description posted, sends it to the supervisor, and asks if the supervisor wants any changes. Any needed changes are made and posted, unless those changes would violate some policy.

> -After qualified candidates are interviewed, the department head makes a recommendation to either HR or the superintendent as to which candidate should be hired, but the Board actually makes the decision.

> -When hiring for a supervisory position, there is also a screening/interview committee. At least three (3) people must be interviewed for open positions. Applications for supervisory positions are received through HR and are vetted to make sure the applicants meet the minimum qualifications. Then, HR makes a list of applicants, noting which meet the basic requirements and which do not. The interview committee is formed by the hiring manager and uses a uniform list of questions which are asked of all the applicants.

(Doc. 40-2 (Dep. Hack at 9, 36-37, 42-43, 46-47, 50-51, 53, 57-58); Doc. 40-2 (Dep. Powell at 8-10, 28); Doc. 40-2 at 76-104 (Procedural Guide for Supervisors)). The procedure for applying for a position is also set out in the Job Announcement. (Doc. 40-1 at 2). Current employees were instructed to submit an Application for Advertised Vacancy form to HR. (Id.) An HR employee then processes the application and determines whether an applicant meets the minimum qualifications for the posted position, then those qualified names are submitted to the Department Head/Principal who establishes a screening committee and ultimately forwards a recommendation to HR. (Doc. 40-2 (Dep. Hack at 43, 46, 50-51); Doc. 40-2 (Dep. Powell at 8-9, 12)).

On May 1, 2014, Howard discussed her interest in the position with Mouton, who seemed surprised it was posted, "claimed ignorance" and "abruptly disengaged from the conversation." (Doc. 40-1 (Dep. Howard at 99-100)). Howard applied for the position. (Doc. 1).

On May 9, 2014, the posting for the Supervisor position was edited as "it was apparently an old advertisement they used that had some obvious errors on it[]" and then re-posted, which is not unusual. (Doc. 40-1 (Dep. Mouton at 36-38, 55, 69-70); Doc. 40-1 (Dep. Howard at 100); Doc. 40-2 (Dep. Hack at 78, 84)). For example, the job posting required 3-5 years of classroom experience, which would infer 3, 4, or 5 years of classroom experience only, suggesting that anyone with 6 years of classroom experience would not be qualified. (Doc. 40-1 (Dep. Mouton at 36-38, 55, 69-70); Doc. 40-2 (Dep. Hack at 78, 84)). The posting also indicated that the job required a Master's Degree in Career & Technical Education, which is "very, very rare[]" as such a degree is something from 40 years ago that only a few universities actually still offer. So, rather than taking the job posting down, it was corrected on-line. (Id.)

On May 16, 2014, HR issued a memorandum to Mouton with a list of three (3) qualified candidates including Howard and Merryman. (Doc. 40-1 at 26-27; Doc. 40-2 (Dep. Hack at 80; Doc. 40-1 (Dep. Mouton at 47)). Mouton selected individuals for a committee to interview those qualified candidates. (Doc. 40-2 (Dep. Moore at 27); Doc. 40-2 (Dep. White at 14-15); Doc. 40-2 (Dep. Ardis at 26)). The committee included Nancy Prine (Caucasian female), Melody Ardis (Caucasian female), Terria Moore (African American female), Thomas Reed (African American male) and William White (African American male). (Doc. 40-2 (Dep. Prine. 85); Doc. 40-2 (Dep. Moore at 25, 27); Doc. 40-2 (Dep. Ardis at. 26); Doc. 40-2 (Dep. White at 15)). Committee members received score sheets and each candidate's resume. (Doc. 40-2 (Dep. Moore at 30); Doc. 40-2 (Dep. White at 15); Doc. 40-2 (Dep. Prine at 87-88, 100); Doc. 40-2 (Dep. Ardis at 29)). The committee's purpose was to "provide a quality objective review of the questions and the responses [of each candidate] and to score them." (Doc. 40-2 (Dep.

Moore at 28); Doc. 40-2 (Dep. White at 15)). "[T]o ask questions, listen to the answers, and rate each applicant based on how…they answered the question." (Doc. 40-2 (Dep. Ardis at 26)).

On May 20, 2014, the committee interviewed the three (3) qualified candidates and scored them as follows based on their responses to the same 10 questions:

|  | Howard | Merryman | Nelson |
|---|---|---|---|
| **Ardis** | 34 | 37 | 15 |
| **Moore** | 34.5 | 34 | 19.5 |
| **Prine** | 28 | 37 | 19 |
| **Reed** | 26 | 38 | 23 |
| **White** | n/a | 43 | 32 |

(Doc. 40-1 at 7-24, 29; Doc. 40-2 (Dep. Prine at 91-92, 113); (Doc. 40-1 (Dep. Howard at 45); Doc. 40-1 (Dep. Mouton at 51)). During each interview, committee members scored each candidate's answers from 1 to 5 (5 being the best), and once all the interviews were completed, turned the scores into Mouton. (Doc. 40-1 (Dep. Mouton at 47, 50, 54); Doc. 40-2 (Dep. Ardis at 26); Doc. 40-2 (Dep. Prine at 92); Doc. 40-2 (Dep. Moore at 28-30).[6] Candidates were *also* given two (2) opportunities to tell the committee more about themselves, experience and/or information that was not covered by the questions asked. (Doc. 40-1 (Dep. Mouton at 51-52)). Mouton attended the interviews and asked questions of the candidates, but did not score them: "I wanted [the scores] to be independent of my input…." (Doc. 40-1 (Dep. Mouton at 48-50, 52); Doc. 40-2 (Dep. Moore at 28); Doc. 40-2 (Dep. Merryman at 109)). According to Mouton, "the interview scores were the sole criteria to determine who would be offered the position and

---

6 While committee member White's score sheet for Howard was lost, even assuming White scored Howard at a perfect score of 50, Howard's score would not be higher than Merryman. (Doc. 39 at 8).

Merryman received the highest overall score.   (Doc. 40-1 (Dep. Mouton at 50)).

Committee members did not have full discussions about the interviews as a committee after each interview was completed, but some members did make "comments."   (Doc. 40-2 (Dep. Moore at 28); Doc. 40-2 (Dep. Prine at 92)).   Comments were made about Howard after her interview – how long she had been in career tech and surprise that she did not have more knowledge.   (Doc. 40-2 (Dep. Prine at 92); Doc. 40-2 (Dep. Ardis at 31)).

Later, committee members Ardis and Prine testified to "surprise" at Howard's inability to answer questions during her interview, given her years of experience.   (Doc. 40-2 (Dep. Ardis 31, 33-34); Doc. 40-2 (Dep. Prine at 89, 93, 118-119)).   They also found her answers vague and demonstrated a lack of Career Tech knowledge and experience.   (Id.)   Specifically, Committee member Prine testified that she thought Howard's answers to the questions were shorter than expected, "very, very brief…I was just surprised[]" as she answered the questions but did not expand or say anything indicating her levels of experience and knowledge.   (Doc. 40-2 (Dep. Prine at 89)). Committee member Ardis testified that she was "personally surprised at her inability…she did not answer questions as well as I thought she would have with her years of experience in career tech."   (Doc. 40-2 (Dep. Ardis at 31)).   "[S]he did not do as well as she could have[,]" as she was "vague on things where she should have been specific[]" and did "not [have] enough knowledge in some of the areas we asked her about[.]" (Id. (Dep. Ardis at 33-34)).   Howard testified that she did not perform research or prepare for the interview. (Doc. 40-1 (Dep. Howard at 136-137, 139)).

In comparison, committee member Ardis testified that Merryman was prepared and his answers were more clear and concise than the other candidates. (Doc. 40-2 (Dep. Ardis 31,

33-34); Doc. 40-2 (Dep. Prine at 89, 93, 118-119)). Also, Committee member Ardis found Merryman "more prepared" and "his answers were more clear and concise than the others." (Doc. 40-2 (Dep. Ardis at 35)). Merryman testified that he prepared for every type of career tech question. (Doc. 40-2 (Dep. Merryman at 109)).

While committee member Moore scored Merryman and Howard very closely (34 Merryman, 34.5 Howard), Prine, Ardis and Reed's scores show a significant disparity between the two (2) candidates. The scores were totaled by Mouton, and Merryman received the highest overall score (189). (Doc. 40-1 (Dep. Mouton at 47, 50, 54).

On May 21, 2014, Mouton e-mailed HR, recommending Merryman, the highest scorer, for the promotion. Mouton relied on "just the scores on the interview," adding the work experience and education was considered in the interview through questions. (Doc. 40-1 (Dep. Mouton at 50-51)). Mouton testified: "[t]he recommendation [to him] is the scores….[a]nd then I make a recommendation…to HR, which goes to the superintendent, who recommends to the board." (Doc. 40-1 (Dep. Mouton at 53)). Mouton testified that he did not hold the position for Merryman, nor did he tell Merryman he was going to give him the position: "[a]bsolutely not. The position is determined by the scores in the interview." (Doc. 40-1 (Dep. Mouton at 47)). On May 22, 2014, HR issued a recommendation request form for Merryman to receive the position, with a start date of June 5, 2014. (Doc. 40-1 at 5). On May 30, 2014, Howard was notified that her application for the position had been rejected.

II.  **Preliminary Issues**

First, Howard's failure to promote case alleges a pattern and practice of discrimination. Howard alleges individual claims and her action was not brought as a class action nor has a class

been certified. "A private litigant cannot maintain a pattern and practice claim unless it is brought as a class action and the class is ultimately certified." Galbreath v. Hale Cty., Ala. Comm., 2017 WL 457197, *19 (S.D. Ala. Feb. 1, 2017). See also Shaw v. Mobile Cty. Public School Sys., 84 F.Supp.3d 1303, (S.D. Ala. 2015) (same). As such, to the extent Howard asserted a pattern and practice claim it is **DISMISSED**.

Second, the Complaint cites 42 U.S.C. § 1985(3) (Doc. 1 at 1). Section 1985(3) prohibits "two or more persons...[from] conspir[ing]...[to] depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Howard does not allege a conspiracy to interfere with a civil rights claim, nor does she use the word "conspiracy" in the Complaint. The record also indicates that Howard has not litigated this claim and Howard does not reference Section 1985(3) in her response. To the extent asserted, Howard is deemed to have abandoned this claim, such that it is **DISMISSED.**

Third, Plaintiff alleges a Title VII, Section 1981 and Section 1983 claim against the Board, and a Section 1983 claim against Mouton.[7] When a Title VII claim is based on the same facts as a Section 1981 and/or 1983 claim, "the analysis is the same under all theories of liability, and the claims need not be analyzed separately." Lindsey v. Board of School Com'rs of Mobile Cty., 491 Fed. Appx. 8, 9 (11th Cir. 2012). See also e.g., Richardson v. Leeds Police Dep't, 71

---

7 Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." Howard must show a violation of a right secured by the Constitution of the United States, and that the deprivation of that right committed by a person acting under color of state law. Cummings v. DeKalb Cty., 24 F.3d 1349 (11th Cir.1994). Section 1983 does not provide substantive rights, but merely "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).

F.3d 801, 806 (11th Cir. 1995) (with "disparate treatment, in which § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same[]"); <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1338 (11th Cir. 2000) (same); <u>Butts v. County of Volusia</u>, 222 F.3d 891, 893-894 (11th Cir. 2000) (same). <u>See also</u> <u>King v. Butts Cty.</u>, 576 Fed. Appx. 923, 931 (11th Cir. 2014) (same).   As such, the claims are analyzed together.

## III.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendants, as the parties seeking summary judgment bear the "initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. Celotex, 477 U.S. at 323. In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

## IV.  Claims

Plaintiff alleges discrimination for failure to promote based on both race (African American) and sex (female) via a Title VII, Section 1981 and Section 1983 claim against the Board, and via a Section 1983 claim against Mouton. Howard alleges intersectional discrimination,[8] that is discrimination due to failure to promote based simultaneously on both race (African American) and sex (female). See, e.g., Jeffries v. Harris Cty. Comm. Action Ass'n, 615 F.2d 1025, 1031-1035 (5th Cir. 1980) (explaining this type of claim).[9] Such requires findings from the Court addressing discrimination based on the combination of race and sex, rather than separately addressing race discrimination and sex discrimination. Id. The analysis

---

8 An intersectional theory of "sex plus" discrimination was first discussed in Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971).

9 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit prior to close of business on September 30, 1981.

of intersectional discrimination claims differs somewhat from separately assessed discrimination claims. As explained in the leading and precedential case on the matter, Jeffries, 615 F.2d at 1031-1035, relying on similarly situated comparators is misplaced and courts should rely instead exclusively on other evidence:

> …*if a Title VII plaintiff alleges that her employer discriminated against black females*, *the only* statistics *relevant* to that claim of discrimination *would be the number of black females hired or promoted by the employer*....*We agree*....*an employer should not escape from liability for discrimination against black females by a showing that it does not discriminate against blacks and that it does not discriminate against females*. We agree that discrimination against black females can exist even in the absence of discrimination against black men or white women......

> *Recognition of black females as a distinct protected subgroup for purposes of the prima facie case and proof of pretext is the only way to identify and remedy discrimination directed toward black females.* Therefore, *we hold that when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff.* Thus, the fact that Jones, who won the promotion Jefferies sought, was black does not bring him within Jefferies' protected class for purposes of her prima facie case. *Similarly, when pretext is at issue that is, when Jefferies attempts to show that the employer's purported reason for the adverse employment action is merely a mask for discrimination by showing that persons outside her class were treated differently than herself[,] black males and white females must be treated as persons outside Jefferies' class...*"

Id. (emphasis added).[10]

---

10 See e.g., Mosley v. Alabama Unified Jud. Sys., Admin. Office of Courts, 562 Fed. Appx. 862, 866 (11th Cir. 2014) (discussing "sex plus" discrimination and the Eleventh Circuit's recognition of "black females as a distinct protected subgroup[]," citing Jeffries); Harrington v. Cleburne Cty. Bd. of Educ., 251 F.3d 935, 937 (11th Cir. 2001) (defining "intersectional" discrimination….where "the defendant treated [the plaintiff] disparately because she belongs simultaneously to two or more protected classes"); Debose v. University of South Fla Bd. of Trustees, 2017 WL 4381696, *6 (M.D. Fla. Sept. 29, 2017) ("when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that...white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff[]"). See also Lam v. Univ. of Haw., 40 F.3d 1551, 1562 (9th Cir. 1994) (internal citations omitted, emphasis in original) (citing Jeffries with approval and stating it was error for the lower court to assess race and sex discrimination separately: "where two bases for discrimination exist, they cannot be neatly reduced to distinct components…the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences….[w]e agree with the Jefferies court that, when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of

A. **Title VII, Section 1981, Section 1983 Claims -- the Board**

Howard alleges two (2) claims against the Board: for intersectional discrimination for failure to promote based on both race (African American) and sex (female) via Title VII/Section 1981 claim, and a Section 1983 claim (for violations of her equal protection rights and under the Fourteenth Amendment). (Doc. 1). As noted *supra*, these claims are analyzed together.

Howard may support her claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008).[11] There is no allegation or submission of direct evidence or statistical proof. Thus, Howard's claims are based on circumstantial evidence. Where there is only circumstantial evidence courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).

Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of discrimination based on failure to promote. Id. Specifically, as explained in Marable v. Marion Military Inst., 595 Fed. Appx. 921, 925-926 (11th Cir. 2014):

> …When the plaintiff relies on circumstantial evidence, as here, we apply the burden-shifting framework articulated in *McDonnell Douglas. See Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir.2010). The plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his prima facie case. *McDonnell Douglas*, 411 U.S. at 802...
>
> A plaintiff establishes a prima facie failure-to-promote claim by showing that: "(1) [he] is a member of a protected class; (2)[he] was qualified and applied for a promotion; (3)[he] was rejected despite [his] qualifications; and (4) other equally or less qualified employees

---

factors, not just whether it discriminates against people of the same race or of the same sex[]").

11 Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). See, e.g., Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002); Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997).

who were not members of the protected class were promoted." *Wilson*, 376 F.3d at 1089.

Next, as explained in Mosley, 562 Fed. Appx. at 867-868 (footnote omitted):

> …the employer must then articulate a legitimate, nondiscriminatory reason for its actions, and then the plaintiff must offer evidence that the alleged reasons of the employer are pretext for illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802–04….

> Regarding the defendant's burden to articulate a legitimate, nondiscriminatory reason for their employment decisions, the proffered reason must "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred." *Tex. Dep't of Cmty. Affairs, v. Burdine*, 450 U.S. 248, 254…(1981). Defendants need not persuade the court they were actually motivated by the proffered reasons, but must raise a genuine issue of fact as to whether they discriminated against the plaintiff. *Id*….

To establish pretext, a plaintiff "cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" Moore v. Jefferson Cty. Bd. Of Educ., 2012 WL 3030109, *7 (N.D. Ala. Jun. 11, 2012)). Courts are not concerned with whether an employment decision is prudent or fair, only with whether it was motivated by unlawful animus; for instance, an employer may fire an employee for a reason based on *erroneous facts* or for no reason at all, so long as the action is not for a discriminatory reason. Pitts v. Housing Auth. v. City of Huntsville, AL, 262 Fed. Appx 953 (11th Cir. 2008). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis added).

However, in Sims v. MVM, Inc., 704 F.3d 1327, 1332–1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment. Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the

record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence to allow a jury to infer intentional discrimination by the decisionmaker. Id. Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

## 1.   Prima Facie Case

Defendants admit, for purposes of summary judgment, that Howard has established a prima facie failure to promote claim for the 2014 Supervisor of Agriscience, Technical Education and Career Technologies position.   (Doc. 39 at 5-6). Howard is a member of a protected subclass (African American female), Jackson v. United Parcel Service, Inc., 2013 WL 5525972, *8 (N.D. Ala. Oct. 4, 2013); she applied for and was qualified for the promotion; she was rejected despite her qualifications; and the position was given to someone outside of her protected class (a non-African American male).

## 2.   Legitimate Non-Discriminatory Reason

The Board articulates the following as its legitimate non-discriminatory reason for failing to promote Howard: based on the committee's interview scores, another employee, Caucasian male Merryman, received the highest overall score.   See supra.   As a result, Merryman was promoted instead of Howard.

Nevertheless, Howard contends that the Board fails to satisfy its burden because the articulated reason is based on subjective perceptions and criteria, "void of an objective comparison of the two candidates."   Specifically, Howard asserts that: 1) Mouton did not consider the candidates' qualifications and justified his recommendation and selection of Merryman "on his subjective perceptions of Merryman's interview results[;]" 2) Mouton manipulated the process to "insure [sic] Merryman, a white male, got the nod[;]; and 3) the

committee failed to consider the candidates resumes, recommendations and/or experience and provided inconsistent and subjective perceptions of Howard's interview. (Doc. 46 at 5-7). Howard adds "[t]he sole focus on this subjective interview process deems the hiring process suspicious." (Id.)

At the outset, Mouton testified that each candidate had at least two opportunities to discuss their experience and qualifications during the interview, which the committee could then consider in terms of how they scored each candidate. Even so, Defendants have repeatedly stated on summary judgment that Howard was qualified – and indeed, all three candidates *had* to be qualified for the position to even make it to the interview stage -- and thus, her contentions about her qualifications not being considered are a non-starter.

As to subjectivity, while Mouton attended the interviews and asked questions of the candidates, what he considered (or what his subjective perceptions may be) is irrelevant under the circumstances because *he did not score or rate the candidates.* Mouton merely *collected* the committee's scores of the candidates, added them, and recommended the highest scoring candidate *as already determined by the committee*. There is no evidence indicating that Mouton's personal opinions or "subjective perceptions" were part of the process. See *supra*. And even assuming *arguendo* the presence of subjective reasons, such "are not the red-headed stepchildren[] of proffered nondiscriminatory explanations for employment decisions[]" and "can be just as valid as objective reasons." Chapman 229 F.3d at 1033–1034. See also Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001) ("Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII

or other federal employment discrimination statutes.").

Moreover, Howard has not shown how the committee's scoring of candidates, based on their answers to the same 10 questions, lacks objectivity, is not an objective process and/or would not result in an objective comparison of the candidates.  While committee members later testified that they were surprised and disappointed at Howard's answers to the interview questions, the members nevertheless still scored her on the criteria of the ten questions – questions which Howard has not shown to be faulty or deficient or lacking in objectivity.

The Court is satisfied that the Board has articulated a legitimate non-discriminatory reason for failing to promote Howard.[12]  Namely, Howard did not receive the highest interview score, a reason that is "clear and reasonably specific." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981).  This reason, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), such that the issue turns on whether Howard has offered sufficient proof to raise a genuine issue of material fact that the reason for not promoting her is pretext.

### 3.    Pretext

In support of pretext, Howard alleges: 1) Mouton preselected Merryman; 2) Mouton

---

12 See, e.g., Levitant v. City of N.Y. Human Res. Admin., 558 Fed. Appx. 26, 29 (2nd Cir. 2014:  "The promotion…went to two candidates who achieved higher scores than Levitant on the test used to select interviewees. No trial evidence rebuts this legitimate non-discriminatory reason for promoting these applicants over Levitant.…..Levitant nevertheless asserts that the jury could have found "but-for" causation from the fact that his interviewer was the same person against whom he had filed a discrimination complaint, his interviewer did not look him in the eye, the interview was brief and routine, and he received his rejection minutes after the interview. These facts are insufficient to admit a preponderance finding of but-for causation, *see University of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. at 2533, in the absence of any evidence that the successful candidates' interviews were longer or different in kind from his own, or that unsuccessful candidates for other promotions received their decisions on a different timeline than he did…. the factual record before the jury did not admit a finding of causation necessary to a Title VII retaliation claim."   Tai v. Nicholson, 2008 WL 4534409, *3 (N.D. Ill. Apr. 29, 2008): finding plaintiff's "claim would still fail because the VA had legitimate, non-retaliatory reasons for not promoting Tai that were not pretextual in nature; the applicant with the highest score, as determined by an independent recommending panel, was selected for each position. Tai was not the highest scoring candidate.…and thus was not recommended by the panels and was not awarded any of the promotions."

17

manipulated the qualification criteria; 3) spoliation of documents; 4) Howard was substantially more qualified than Merryman; 5) testimony is inconsistent; and 6) the Board deviated from custom and policy. (Doc. 46 at 8-22). At the outset, the Board did not conduct the interviews of the qualified candidates, a separate independent committee did. The Court now focuses on Howard's specific pretext arguments, addressing each in turn.

First, as to **spoliation**, Howard contends that defendants failed to produce committee member White's score sheet for her, and that from this alone, "[a] reasonable juror could deduce that Mouton destroyed the document because it stated a preference for Howard." (Doc. 46 at 15-17). There are no spoliation claims in this case. On summary judgment, Howard can neither amend her complaint nor raise new claims. See, e.g., Fuller v. Winn-Dixie Montgomery, LLC, 2017 WL 3098104, *5-6 (S.D. Ala. Jul. 19, 2017) (discussing this general rule with case examples). Additionally, Howard's argument is based on sheer conjecture as she submits no evidence – *whatsoever* – establishing that Mouton (or anyone else) "destroyed"[13] the score sheet. From the evidence, White's sheet simply appears to have been accidentally misplaced or lost.

Second, as to Howard's **qualification** arguments, her qualifications are not in dispute. All three (3) candidates were qualified for the promotion. Defendants do not dispute that Howard was qualified. The candidate who received the highest overall score during the interview process was promoted, and Merryman received the highest score (rather than Howard's suggested side-by-side comparison of Merryman versus her own qualifications). Thus, the qualification argument, again, is a non-starter.

---

13 The cases relied upon by Howard address "non-accidental destruction" or "destruction" and here, there is no allegation much less evidence of similar circumstances.

Third, Howard claims Mouton **preselected** Merryman for the promotion. As evidence she states that a co-worker told her that Mouton promised Merryman the position in October 2013. This evidence is unreliable hearsay; there is no affidavit from the co-worker, nor any information regarding how the co-worker knew that Merryman was pre-selected. Thus, this evidence does not support the allegation of pre-selection. Howard also summarily points to Merryman's classification card (Doc. 53-13) that indicates on January 9, 2014 Merryman was reclassified to the Supervisor position with a "begin date" of October 2014. This is Howard's only evidence, as opposed to conjecture, to support her allegation of pre-selection. However, neither side has explained this classification card or the fact that the "begin date" is also inconsistent with the evidence that Merryman's "begin date" was June 5, 2014. (Doc. 50-1 (Dep. Merryman at 19); Doc. 53-12). Nevertheless, it is sufficient to warrant further discussion on the allegation.

"[P]reselection of candidates does not "necessarily indicate….discrimination[,]" even in violation of company policy. Springer v. Convergys Customer Mgt. Group, Inc., 509 F.3d 1344, 1350 (11th Cir. 2007); Roberts v. Gadsden Mem. Hosp., 835 F.2d 793, 796–797 (11th Cir. 1988); Scott v. Rite Aid of Ga., Inc., 918 F.Supp.2d 1292, 1303 n. 12 (M.D. Ga. 2013); Alexander v. Baldwin Cty. Bd. of Ed/, 2008 WL 3551194, *7 (S.D. Ala. Aug. 12, 2008). However, "while preselection does not *necessarily* establish pretext, when an employer's proffered legitimate, nondiscriminatory reason is that it did not engage in preselection but instead used a standardized hiring process, and the employee offers evidence that this is all a lie, a genuine dispute is created." Williams v. Georgia Public Safety Training Ctr., 2013 WL 4505816, *5 (M.D. Ga. Aug. 22, 2013 (emphasis in original)).

The unrefuted evidence indicates the Board used a standardized hiring process, see *supra*, and there is nothing before the Court indicating that "this is all a lie." Additionally, Howard admitted that she had no evidence establishing that Mouton improperly influenced and/or manipulated the Board and/or the committee's scoring to preselect Merryman: "I don't have any evidence." (Doc. 40-1 (Dep. Howard at 158)). Howard also does not allege that Mouton created the interview process, and she submits no evidence as to what Mouton allegedly did or said to committee members that would have resulted in Merryman's selection over her. (Id. (Dep. Howard at 175-176)). Indeed, Howard has presented no information or evidence that Mouton influenced the committee, in any way, in their scoring. Howard also never discussed the matter with the committee to see whether there was any influence by Mouton, or to see how the committee viewed Merryman's interview and performance (versus hers). (Doc. 40-1 (Dep. Howard at 185-186, 209-210)). When Mouton sent his recommendation on to HR, it was based on "just the scores" (recommending the highest scoring candidate), which then goes "to HR, which goes to the superintendent, who recommends to the [B]oard." (Doc. 40-1 (Dep. Mouton at 53)).

As a result, Howard's contentions appear rooted in personal theories and speculation: "I believe, because they work directly for him…that if he wanted Mr. Merryman….I feel like they would have done what he wanted them to do because they were pretty much directly under him[]" and "that's my belief." (Doc. 40-1 (Dep. Howard at 184-185)). Howard, however, has not submitted evidence that any actions by the Board were related to her protected status much less motivated by same. "However fervent…[Howard's] own belief, without more, simply does not raise a triable issue of fact, especially when the Board has offered extensive legitimate

business justifications for not choosing her for the position. It is true that…for summary judgment, 'the court must...make all reasonable inferences in favor of' the nonmoving party….[h]owever, 'an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation.' *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir.1983)." <u>Miller v. Jefferson Cty. Bd. of Ed.</u>, 2014 WL 769632, *5 (N.D. Ala. Feb. 26, 2014).[14]

Fourth, Howard argues that **inconsistent testimony** shows pretext, but has not shown how any alleged inconsistences reveal race and sex discrimination as to her failure to promote claim.   Howard has also not explained how any such inconsistences in testimony (by Mouton or others) are even relevant….when the singular reason Merryman was promoted instead of Howard was due to the fact that he received the highest overall interview score, as determined by the committee (not determined by the Board or by Mouton).

Fifth, Howard contends that the Board's hiring process deviated from **custom and policy** but does not explain, nor submit evidence for, this argument.   At most, Howard appears to suggest the editing of the original May 1, 2014 job posting was some sort of "behind the scenes plot" by Mouton to tailor the posting to Merryman's qualification and his alone.   However, there is no evidence to support this.   And as explained by Mouton, *supra*, the posting was edited due to the presence of errors and to make it *more* accessible to qualified candidates.   Moreover,

---

14 <u>See</u>, <u>e.g.</u>, <u>Mayfield v. Patterson Pump Co</u>., 101 F.3d 1371, 1376 (11th Cir. 1996) ("[r]ebuttal requires that a plaintiff present 'significant probative evidence on the issue to avoid summary judgment….conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext[]'"); <u>Young v. General Food Corp</u>., 840 F.2d 825, 830 (11th Cir. 1988) ("[c]onclusory allegations of discrimination without more, are not sufficient to raise an inference of pretext of intentional discrimination where [employer] has offered...extensive evidence of legitimate, nondiscriminatory reasons for its actions[]"); <u>Hollingsworth v. O'Reilly Automotive Stores, Inc.</u>, 2015 WL 412894, *10 (N.D. Ala. Jan. 30, 2015) (granting summary judgment in favor of defendant as plaintiff "offers only isolated facts tied together with speculation. The leaps that a fact finder would have to make to find pretext in the present case are too great, and…[plaintiff's] narrative does not rise above conjecture[]").

both Howard and Merryman qualified for the promotion, as they were selected as "qualified candidates" to be interviewed. So even with the edited posting, Howard qualified. And as explained *supra*, the record reflects the Board used its standard hiring process for the promotion process rather than some sort of significant departure (or deviation) from same.

As a whole, Howard's pretext argument appears to be a quarrel with the Board's promotion decision. Howard "cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'" Moore v. Jefferson Cty. Bd. of Ed., 2012 WL 3030109, *7 (N.D. Ala. Jun. 11, 2012). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Accordingly, as Howard has failed to offer evidence that the Board's explanation is pretext for race and gender discrimination, versus a mere "quarrel," she has failed on her burden.

Finally, even discarding McDonnell Douglas, the Court is unable to piece together a "convincing mosaic" from the circumstantial evidence on record from which a reasonable jury could infer an unlawful discriminatory intent in the failure to promote Howard based on her African American female status. Cf. Davis v. Dunn Constr. Co., Inc., 2012 WL 1952125, *15 (N.D. Ala. May 24, 2012) ("In [Smith], [644 F.3d 1321] the 'convincing mosaic of circumstantial evidence' was extensive: there was a documented history of disparate treatment of Caucasian and African–American employees, a spreadsheet listing the employees by name and race that the defendant's disciplinary review committee used to make discipline decisions, and a news program reporting the defendant's struggles with racism in the workplace[ ]"). The record lacks examples of overt race and sex hostility or historical evidence of such disparity, and

Howard does not detail any race and sex "events" surrounding (or involved in) the interview process. Testimony by committee members reveals that the decision not to promote Howard was based on factors unrelated to her protected status as an African American female. While Howard characterizes Mouton as cherry-picking Merryman for the promotion and that his "bias" for Merryman tainted the entire process, this argument ignores the facts. Namely, that the committee scored each candidate and Mouton simply added those scores up to ascertain the highest scorer, which happened to be Merryman. Mouton then recommended the highest scoring candidate. There is no evidence that Mouton changed scores or "doctored" the interview process, or did anything else....much less did so in a manner that discriminated against Howard based on her race and sex. Put simply, "'[t]he ultimate burden of persuading the trier of fact that the defendant is intentionally discriminating against the plaintiff remains at all times with the plaintiff[,]'" and Howard has failed to present sufficient evidence from which a trier of fact could reasonably find in her favor. Wilson, 376 F.3d at 1086.

In sum, Howard has offered no evidence that the proffered reason by the Board is false, or that it was motivated by race and sex (her African American female status). Howard "bears the ultimate burden of proving that the employment action at issue was taken because of the plaintiff's [protected characteristic]." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1273–1274 (11th Cir. 2000). Howard has failed to satisfy this burden. As such, the Board's motion for summary judgment as to this claim is **GRANTED.**

### B. Section 1983 Claim -- Mouton

Howard alleges one (1) claim against Mouton, a Section 1983 intersectional race and gender discrimination claim against him in his individual capacity for violations of her equal

protection rights and under the Fourteenth Amendment.    (Doc. 1).    On summary judgment, Mouton asserts that he is entitled to qualified immunity.    The Court agrees.

As explained in Mitchell v. City of Mobile, Ala., 2017 WL 1740364, *10 (S.D. Ala. May 3, 2017): qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"    To receive qualified immunity, Mouton must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, and then the burden shifts to Howard to show that qualified immunity is not appropriate.    As specified in Matthews v. City of Mobile, Ala., 2016 WL 1736061, *26 (S.D. Ala. May 2, 2016):

> Regarding discretionary functions, the inquiry concerns whether the acts in question are of a type that fell within the defendant's job responsibilities, and asks whether the defendant was performing a legitimate job-related function through means that were within his or her power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-1266 (11th Cir. 2004). Once a defendant establishes this, the plaintiff has the burden of establishing that qualified immunity is not appropriate. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Matthews must show: 1) that the defendants infringed a right protected by a statute or the constitution, and 2) that such right was clearly established at the time of the alleged violation. *Holloman*, 370 F.3d at 1264.

In an endeavor to overcome Mouton's claim of immunity, Howard contends that his actions violated her rights because he was motivated by unlawful and biased motives:

> A reasonable government official would have known in 2014, that engaging in intentional discrimination…would violate the equal protection clause.…Plaintiff's non-selection…as but for her race and gender, African American [female], resulting in unlawful discrimination in the workplace. Mouton…was charged with the responsibility of participating in the hiring decision for the position of Supervisor and failed to abide by prohibitions against discrimination in the workplace [ ].…Plaintiff's non-selection, viewing the totality of circumstance…are sufficient to allow a jury to infer Mouton's non-selection of Plaintiff was tainted with bias and a discriminatory animus. A reasonable official would have known that discriminating against employees on account of their race was unlawful. *Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009). As a

result, Mouton, who participated as a decision maker, should be held accountable since his actions violate clearly established law. *See, Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003); *Cross*, 49 F.3d at 1507; *Bryant*, 575 F.3d at 1300.

(Doc. 46 at 26-27 (footnote omitted)).

The evidence reveals that Mouton received the scores rendered by the committee. Mouton totaled those scores to arrive at the highest scoring candidate, and recommended that candidate for the promotion. These actions fall within Mouton's discretionary authority as part of performance of his duties and within the scope of his authority – i.e., he was performing a legitimate job-related function. The Court is satisfied that Mouton has met his initial burden.

Having shifted the burden to Howard, she must show Mouton infringed on a clearly established right protected by a statute or the constitution. As noted *supra*, Howard rests her immunity argument on the "totality of circumstances" from which she asserts that the following "inference" can be made: because she was not chosen for the position, the selection process was *necessarily* tainted with bias and discrimination. The Court cannot agree.

The record supports a finding that Mouton is entitled to qualified immunity. As discussed *supra*, the evidence demonstrates that Howard was not promoted due to factors unrelated to her race and sex – she did not receive the highest interview score. The evidence shows that Mouton relied upon the scores the committee provided (scores issued by a diverse committee in terms of race and sex), and based on those scores, with Merryman receiving the highest score, made his recommendation that Merryman receive the promotion. There is no evidence before the Court indicating that Mouton could not or did not rely on the committee's scores in making that recommendation. Thus, Howard has not shown that Mouton infringed on a clearly established right protected by statute or the constitution, relating to her denial of the

promotion.

Upon consideration, the Court finds that Mouton is entitled to qualified immunity such that Mouton's motion is **GRANTED** on that basis and the Court need not address Mouton's other arguments on summary judgment, which are deemed **MOOT**. As a result, Mouton's motion to strike (objection), regarding evidence submitted by Howard, is **MOOT.**[15]

IV.   <u>Conclusion</u>

Accordingly, based on the foregoing it is **ORDERED** that: 1) Mouton's motion for summary judgment (Doc. 41) is **GRANTED**; 2) the Board's Motion for Summary Judgment (Doc. 39) is **GRANTED;** 3) Mouton's motion to strike (objection) (Doc. 60) is **MOOT**; 4) Howard's Section 1985(3) claim, to the extent alleged, is **DISMISSED**; and 5) Howard's pattern and practice claim, to the extent alleged, is **DISMISSED**.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u>.

**DONE** and **ORDERED** this the 1st day of **November 2017.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

15  Additionally, it is unclear how the email referenced in the affidavits (mentioning an African American male) would support Howard's *intersectional discrimination* claim based on *both* her race *and* gender (African American female).   Howard has not shown how such is relevant to her claim given <u>Jeffries</u>, 615 F.2d at 1031-1035 instruction that "black males" are outside of her class and evidence of discrimination as to them would be irrelevant.